Good morning. May it please the Court. I am Michael Hongs on behalf of the Commissioner of Internal Revenue, and I would like to reserve three minutes of my time for rebuttal, if I may. The clock will show your entire time, so you help keep track of it.  Thank you. The issue in this case is what is the proper forum in which a taxpayer can bring a claim that the IRS has failed to either sell property or to make a written determination that selling the property would not be in the best interest of the United States under Section 6335F of the Code. And we respectfully disagree with the tax court, and we contend that it exceeded its jurisdiction when it decided here to fashion a monetary remedy of ordering the IRS to credit the taxpayer for property that had not actually been sold and as to which the government had not actually realized any money. Our contention is the proper place to bring that claim would be in a district court under Code Section 7433, which permits damages claims against the IRS. Why do you think it's a damage claim in the sense of the word? It's a setoff, which is an equitable remedy. The issue seems to be less whether it is equitable, but whether it is really monetary. I mean, yes, it is a kind of setoff, but it is a replacement. It's not in Bowen v. Massachusetts terms. It's not the very relief that the taxpayer was asking for. One way to illustrate that, as we explained in our briefs, is that in Bowen, the issue was whether the government, I think it was HHS, was supposed to pay a particular claim to the State of Massachusetts, and the relief that the court ordered put both parties in the position that they would have been in otherwise. In other words, the government paid out the money, so it didn't have the money. The State did have the money. Here, it's a sale of property that would go to a third party, so that what the court did was damages because it was a substitute remedy. It was too late. The government could not actually give the taxpayer what he had asked for, which was a sale of the property in a timely way. The government is ordered to credit the taxpayer, but the government hasn't gotten the money. I mean, not to interrupt, but isn't that a classic equitable remedy as opposed to a damage remedy? I mean, we think of it in tort terms. There's a big difference between monetary damage and equitable relief. And even in, say, the bankruptcy context, the courts have been pretty clear that there's a difference between a set-off and an affirmative claim. And it's hard for me to see that this isn't just an exercise of equitable powers rather than monetary relief. That may – that conclusion may lead us in a different direction. But what's – we all know that the end result is money, but that's true for all of these cases. So what's the principal distinction you'd have us draw? The principal distinction that we're drawing here really is that it's not putting the parties in the position they would have been in before. It is – the government is out the money. It's not getting the money from the sale of the stock. And furthermore, I'd say even if it is considered an equitable remedy, that does lead us in the other direction, that the tax court does not have general equitable jurisdiction. This is, admittedly, a little difficult area, and the cases have – well, let's forget about the difference between equity and law for a moment. The whole principle of the rules of civil procedure and the reforms that we have seen over the last 60 years has been to try – 70 years now, I guess it is – has been to try to resolve all claims in the same forum. So we have counterclaims. We have set up – we have all these mechanisms to try to get things resolved in the same forum. Why isn't what you are arguing for here in the teeth of that spirit? Well, tax law is somewhat different. We're not dealing with the Federal rules of civil procedure. This is the tax court, which is an Article I court of more limited jurisdiction. I'm just talking about common sense. I'm just talking about common sense, efficiency, and getting claims resolved. The government's for that, isn't it? Absolutely. Even the IRS? We are limited by what Congress does, what jurisdiction Congress gives to the different courts and the remedies that Congress creates. And it gives the tax court a limited degree of jurisdiction, particularly in a collection due process hearing. This isn't even the sort of traditional tax court bread and butter kind of case, which is a deficiency case, which is what they've had for decades. This is the newer remedy that goes back to the late 90s, a collection due process. And that is an even more limited regime of what the tax court can do. The issue on the table in the collection due process hearing is essentially is the collection correct? The collection, the proposed collection activity, is the levy correct? Or, as a taxpayer would traditionally argue, no, I don't want you to seize my house or my vintage car or whatever. I have other bank accounts that I haven't told you about. I could pay the tax out of that. Or why don't we work out an installment agreement? Let's pause and see if there's another way to get this tax paid. That's the issue that goes on. But you would agree that the notice of levy constituted a seizure. That's what the tax court said. Do you disagree with that? No. That's right. A levy is a seizure, yes. All right. So, and you would agree that the statute allows the Petitioner, the taxpayer, to demand sale within 60 days, right? Yes. Okay. And the tax court found that such a demand was made. I realize the Commissioner disagreed with that below, but we assume it here. We haven't appealed that as a fact yet. Okay. So what you're saying then is that right then, after the 60th day, the taxpayer should have filed a suit in Federal district court. Is that what you're saying? He had two years from that 60th day in which to do so. And I would note in that regard that although he ultimately or they ultimately ended up being pro se, at the point, at that point in the administrative procedure, they still had competent counsel. And when they got to the tax court, which was still within that two-year period, they had counsel. Their tax court petition was filed by counsel. And the tax court petition actually didn't even cite 6335F. It didn't even raise this issue. It was not raised until the Zapparas, who by that time were pro se, they were the actual – I'm embarrassed to say the lawyers in the case never cited 6335F. The first place it was cited was in their reply brief that they filed pro se. And then it ultimately became the focus of everything. Sure. But I guess back to Judge Schroeder's point, I mean, you have a multiplicity of claims out of a fairly simple levy. It's what the government is advocating that we say, that you can't – no, no, you can't go to the tax court on this. You have to go to the Federal district court first and have two proceedings involving the same levy going on at the same time. And I agree one could see that as being in some ways inefficient, but it is the regime that Congress has set up for us. And in tax law in general, it is a relatively complicated regime in the sense that, as you know, courts can – taxpayers have options to go to a number of different courts, and sometimes procedures do get to be somewhat piecemeal. They can either go to the tax court in a deficiency proceeding or they can pay it and go to district court or the court of Federal claims. And we see cases where taxpayers are rising out of the same transaction. They bring one case to the court of Federal claims, and then they bring a different tax year related to the same transaction to different courts. So it's not a really – No doubt about that. But it seems to me – I mean, in reading the tax court's opinion, I have to say I thought, well, they've made a fairly logical case that in cases like this, there may be concurrent jurisdiction in the Federal district court, to be sure, but in the limited exercise of the equitable jurisprudence that is allowed under their jurisdiction, that this was an appropriate remedy within the statute. And it seemed to me they made a fairly logical case on why that ought to be so in this very limited circumstance. What's the harm of that? The harm is that it violates, in our view, sovereign immunity, that the tax court did not have the power and it was – it didn't have a waiver of sovereign immunity that permitted it to exercise that jurisdiction, however logical or tempting it might be to sort of wrap it up in one proceeding. But, you know, that's in a bankruptcy context. We consider similar claims, and the courts have held that sovereign immunity is waived to the extent of the claim asserted by the government. So, in other words, a set-off, if the bankrupt asserts a set-off, the debtor, that's allowed against the government, whereas an affirmative claim, more – in other words, the government owes me money, might not be allowed. I'm thinking of the Nordic Village type of cases. Is that different here in the tax court? I have to say I'm not as familiar with the bankruptcy context, but, yes, we don't – we don't think that the tax court has jurisdiction over a claim of this type. Really, it has to go to the district court. There's just not a waiver. Are you relying on Section 7433? Is that the – what is the regime that – the statutory regime that you refer to that mandates this audits? We think that the – yes, 7433, because it is the exclusive remedy for damages. And it says it's exclusive. And so this is sort of topological, isn't it? You know, you say, well, that's the exclusive remedy for damages. So we call this damages. So, therefore, you have to use that. But it's really a claim that can be set off, if you look at it in another way, isn't it? We disagree with that. We disagree with really calling it a set-off or with saying that it is not damages is really what it comes down to. And I see I'm – well, I've got a few minutes left, if you have more questions before. You may want to reserve those. All right. I'll reserve the remainder of my time. Thank you very much. Thank you, Your Honor. And may it please the Court. Amy Feinberg, appearing on behalf of Petitioners Michael and Gina Zappara. To address a couple of points that counsel for the Commissioner raised, first, counsel suggested that the remedy ordered here was damages because the IRS would be in a different position than it would have been had the same – in light of the credit. But that's a distinction really without a difference. In Bowen, the courts stated that back pay was a classic example of specific performance and – rather than damages. But in those cases, the employer is not necessarily in the same position it would be if, for example, the employer could hire a new employee and pay that person to perform the same tasks, yet still has to pay the employee who's been wrongfully terminated the same salary. So the idea that the government here might be in a different position than if it had actually complied with its obligations under the law and sold the Zapparas property really doesn't matter with regard to deciding that this, as the tax court correctly found, was a specific performance, as the Herx court suggested, rather than damages. Let's assume for the sake of argument that the amount of stock or the value of the stock would have exceeded the claims, back tax claims of the IRS. Do you think the tax court would have had the authority to authorize a refund? I think probably not, Your Honor. That would be different, and that would start to look more like a recovery as contemplated under Section 747. The position that it would have, the tax court has the authority to grant a set-off up to the amount of the claim, but no more. I think that's probably right, Your Honor, because once it exceeds the amount owed by the taxpayer, you're starting to get closer to what 7433 contemplates, which is a recovery of the injury that the taxpayer has incurred. And the situation here is quite different and really looks more like what this court decided in the Estate of Branson case, which is that the tax court has jurisdiction to apply the equitable doctrine of equitable recoupment to order a credit in instances in which the taxpayer has overpaid his or her taxes. So I think the situation Your Honor raises is different. Another point that counsel raises is that the tax court has limited jurisdiction and really emphasized that point. And it's true that the tax court's competence is limited and its subject matter jurisdiction is limited to tax matters, of course, but this Court has stated very clearly that the tax court has the same equitable power as a district court. And when the IRS comes forward and challenges an exercise of the tax court's equitable power, it must point to a statute that affirmatively divests the court of that power. And that, again, is the teaching of the Estate of Branson case. And the tax and the IRS really has not pointed to any statute that would do that here. So, but isn't this really, I mean, if you strip it down, the, if the, if the government is levied and the purpose of the tax court proceeding is to figure out how much the taxpayer owes, isn't it? The purpose, the Section 6330C2 sets out what the scope of relevant issues are, and that section speaks quite broadly. It says that the proper subject for a hearing is any relevant issue relating to the unpaid tax or the purpose. Kagan. It all relates to how much the taxpayer owes, the unpaid taxes. That's right, Your Honor, and related to the levy. And, of course, the sale of levied property is inextricably linked to the levy. The same thing. That's right, Your Honor, because, of course, the point of the levy is to sell the property, pay for the taxpayer's unpaid tax liabilities. So that statute sets forth a very broad scope of issues that the tax court can cover. And whether the tax court's jurisdiction has traditionally been limited to deficiencies, as counsel for the Commissioner stated, that really isn't relevant here, because you have a clear congressional grant of authority to the tax court to allow it to look at any relevant issue. And I think that point also addresses the government's suggestion that sovereign immunity would bar the remedy here. The government admits in its brief that that provision that the tax court may consider or that the CDP hearing may consider any relevant issue is a waiver of sovereign immunity. And that language is so broad that it clearly encompasses the claim and the remedy here. The final point I would raise, Your Honor, is that with regard to Judge Schroeder, your suggestion regarding the government's position would lead to a piecemeal approach. It certainly would. And, moreover, here it would be fundamentally unfair, because the appeals officer considered the sale issue raised by the Zapparas. It wasn't that they raised it and the appeals officer said, oh, I'm not going to consider that. It's not properly within my purview. In fact, the appeals officer considered that, and the IRS admitted that it was considered not just simply raised by the Zapparas, but that it, in fact, was considered by the appeals officer. And that concession is in the IRS's motion for summary judgment before the tax court, which I don't believe is in the excerpts of record, but is in the record before this Court. So were the government's position to prevail, you would have, as Your Honor pointed out, piecemeal proceedings, and that here would work an extreme injustice on Mr. and Mrs. Zappara, and that's why the tax court's exercise of its equitable powers to achieve a just result here should be affirmed. If the panel has no further questions, I would appear to be able to submit. Thank you very much, Your Honor. Just a few points to address in response. One response to this question of whether this is some sort of equitable remedy, as we pointed out in our brief, if it is an equitable remedy, in other words, if it's not damages, then it starts to run afoul of the Anti-Injunction Act, which is read And I'm thinking of the old Zimmer case, which I think was from the 70s or 80s. And it, I mean, essentially means it's not just an injunction that directly says IRS, do not assess this tax, but as the Court explained in that case, it's anything that would tend to impede the collection of the tax. And the problem here is that by ordering, if we call this a set-off, by ordering the account of the taxpayers to be credited for this $40-some-thousand, it's effectively barring the IRS from actually collecting that money from them or from anybody, because the property is not worth anything. The government's out that money, in other words, and it's been enjoined from collecting it. So for that reason We can discuss Pittman and Barlow's. In those cases, other services have ordered a credit. And I gathered your distinction was because the government did not control the property. Is that right? Well, there's several distinctions. One would be, yes, what you're alluding to, the government's actions in Pittman and Barlow were so egregious that they amounted to effectively a, I guess you'd call it a conversion. The government exercised so much control that it took the property. But if the government had the power to sell the stock or order to sale the stock in this case, what's the principal distinction between this case and those two? Well, there's a couple of other distinctions, one being those were district courts, which have broader jurisdiction. They were also pre-7433, and although the government doesn't necessarily disagree with the outcome of those cases on those facts at that time, nowadays our position would be those cases should be brought under 7433. That would be the proper basis for bringing those cases today. Really the analogy, I think, this case is nowhere near the Pittman or Barlow's level of government control. I think a better analogy would be if in Pittman, that was the case where the government took the real estate, took the houses, and then sort of let them deteriorate and then gave them back to the taxpayer. That would be analogous to if the government took the Zapara's stock account and didn't simply hold it, but started actively trading it and, I don't know, borrowing money on margin and making speculative trades on stock and then gave it back to them and said, well, sorry, this didn't work out so well. That would be closer to the situation. Well, what's the analytical difference when you have a duty to sell it within 60 days after a statutory duty to sell it? They demand sale. You don't sell and it loses money. It actually isn't a statutory requirement to sell, absolutely. It's a requirement to sell or make a decision that sale would not be in the best interest of the government. No, it didn't do either. It didn't do either. That's true. But the, I mean, the difference would be it's a kind of inaction on the part of the government, and it's more analogous in that sense to the Cleveland share case that we Well, it was a situation where taxpayers, as a condition of taking an appeal to an appellate court in their tax litigation, had a post security. And what they posted was government bonds or treasury notes. And the government held them for a couple of years as security. And during that period of a couple of years, the notes matured and stopped paying interest. And the taxpayers said, well, this was mismanagement by the government because it just held the property and it didn't roll them over into new bonds or notes and they lost an enormous amount of interest as a result. And the court said they don't have a remedy in that case. I would say that is closer to this case where the government didn't take affirmative action. It simply failed to sell as it should have or make a decision not to sell. You agree the government should follow the law here? In the end, yes. Yes. You're saying that some violations are more serious than others? Is that basically your argument? It's yes. And it's also it relates to the place where the violation can be adjudicated. In other words, we're not disputing that if they had brought this claim to the district court under 7333 7433, that would be proper and the district court would have jurisdiction to award them relief of this sort. Okay. All right. I see that my time has expired. We understand your position. Thank you very much. Thank you. The case just argued is submitted for decision.
judges: Adelman, Schroeder, Thomas